UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SOLOMON WILLIAMS, et al.,

    Plaintiffs,

v.

THE BOEING COMPANY, et al.,

    Defendants.

No. C98-761P

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DISPARATE IMPACT CLAIM

    In this class action, Plaintiffs allege that the Boeing Company has engaged in a pattern or practice of race discrimination in promotions against African-Americans in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.  Plaintiffs allege both disparate treatment and disparate impact claims. The certified class includes African-American salaried employees employed by "Heritage Boeing"[1] from June 6, 1994 to the present, excluding executives and certain technical workers, seeking injunctive relief for racial discrimination in promotions.

    This matter was tried from December 5, 2005 to December 19, 2005.  Plaintiffs' Section 1981 and disparate treatment claims were tried to a jury, while the disparate impact claim was tried to the Court.  The jury rendered a verdict in favor of Defendant on December 21, 2005.

    Plaintiffs' disparate impact claim is based on allegations that Boeing had facially neutral

---

[1] "Heritage Boeing" refers to the Boeing Company before it acquired additional companies in the late 1990s and 2000.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
PAGE – 1

employment practices that caused a significant disparate impact on members of the class with respect to promotions. Unlike a disparate treatment claim, Plaintiffs are not required to prove intentional discrimination in order to prevail on a disparate impact claim. As a result, the jury's verdict in favor of Defendant does not foreclose Plaintiffs' disparate impact claim.

Having considered the testimony and evidence admitted at trial and the arguments of counsel, the Court finds that Plaintiffs have not proved their disparate impact claim by a preponderance of the evidence. Therefore, judgment on this claim will be entered in favor of Defendant.

**Framework for Analysis**

A plaintiff seeking to establish a prima facie case of disparate impact must:

(1) show a significant disparate impact on a protected class or group; (2) identify the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact.

Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1190 (9th Cir. 2002). The Civil Rights Act of 1991 also provides that "if the complaining party can demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one employment practice." 42 U.S.C. § 2000e-2(k)(1)(B)(i).

**Findings of Fact**

1.      Plaintiffs have not demonstrated that the elements of Boeing's decisionmaking process are not capable of separation for analysis.

2.      Plaintiffs identified several employment practices in their proposed findings of fact and conclusions of law that allegedly caused a disparate impact on class members with respect to promotions: (1) subjective decision-making in the promotion process; (2) unstructured interview processes; (3) failure to monitor for adverse impact of promotion processes; and (4) failure to maintain an applicant tracking system. (Dkt. No. 1029 at 26-28).

FINDINGS OF FACT AND CONCLUSIONS OF LAW
PAGE – 2

*Employment Practices at Issue*

3. The Court finds that Boeing did not have an undisciplined system of subjective decision-making in promotions. Plaintiffs introduced evidence that there has been a degree of subjectivity in decision-making regarding promotions at Heritage Boeing during the class period. In general, the company placed significant discretion regarding promotion decisions at the level of the individual employee's manager. However, Boeing also had written promotion guidelines in place during the class period, as well as policies that permitted an employee who believed that he or she was denied a promotion to complain to the company's Equal Employment Opportunity organization, which could initiate investigations and provide for corrective action where warranted. Therefore, while there was a degree of subjectivity in decision-making regarding promotions, the system was not excessively subjective.

4. Boeing did not have a policy that required the use of "structured interviews" during the class period; that is, managers were not required to identify questions in advance of an interview and to ask the same set of questions to all candidates for a job or promotion. However, structured interviews were used at Boeing in some situations during the class period.

5. Boeing did not consistently monitor the effects of its promotions policies on African-Americans during the entire class period.

6. Boeing did not consistently maintain an accurate applicant tracking system during the entire class period.

*Disparate Impact*

7. To attempt to gauge disparities in promotions between class members and similarly-situated Caucasian employees during the class period, Plaintiffs offered statistical analyses by Janice Fanning Madden, Ph.D., while Defendant offered an analysis by Michael Ward, Ph.D.

*Promotions Data*

8. In the earlier part of the class period, Boeing's data system used a series of 77

FINDINGS OF FACT AND CONCLUSIONS OF LAW
PAGE – 3

"transaction codes" to capture transfer or reclassification transactions. These codes were input by or at the direction of human resources employees who reviewed the transaction paperwork and selected the code that they believed was appropriate for the transaction. The multiple codes were subject to the interpretations of individual human resources employees and the transaction codes were not designed to match the subjective beliefs of the managers and employees involved. As a result, these transactions codes did not necessarily identify transfers that employees or managers would have regarded as "promotions."

9. In 2001, Boeing introduced a new data marker called the "Prom_Ind" indicator. This indicator is a "Y/N" marker in a specific data field, with "Y" indicating a "promotion." Boeing attempted to "push back" the "Prom_Ind" indicator through its historical data to mark promotions that had occurred before the indicator was adopted in 2001. However, this effort did not consistently "push back" the "Prom_Ind" indicator to mark job actions that may have constituted promotions before 2001.

10. In 2002, Boeing adopted a new data rule that specified the precise circumstances under which a promotion would be indicated. The criteria adopted in 2002 for marking promotions are not the same as the criteria that had been used before to indicate promotions.

11. The Court finds that Boeing did not use one consistent method to indicate in its data files when an employee had received a promotion during the entire class period. Boeing's methods of attempting to mark when a promotion had occurred changed over the class period and were based on different criteria.

12. The named Plaintiffs testified to various criteria that they subjectively used to identify a promotion. These criteria include greater opportunities, more responsibility, or better pay. No consistent definition of the term "promotion" was ever put forth and no consistent data collection capture these varying concepts.

13. The Court does not regard the "Prom_Ind" indicator as a consistent or accurate data marker for promotions at Heritage Boeing during the entire class period, particularly for the

FINDINGS OF FACT AND CONCLUSIONS OF LAW
PAGE – 4

period before 2001.

*Dr. Madden's Analyses*

14.     Dr. Madden performed a multiple pools analysis, as well as probit regression analyses, to attempt to assess disparities in promotions between class members and similarly-situated Caucasian employees. Based on her analyses, Dr. Madden concluded there was a statistically significant disparity between the promotion rates of class members and similarly-situated Caucasian employees at Heritage Boeing between 1995-2004.

15.     The Court does not find Dr. Madden's analyses to be persuasive. In conducting her analyses, Dr. Madden relied exclusively on the "Prom_Ind" indicator to determine when promotions had occurred. Because the "Prom_Ind" indicator was not always an accurate or consistent measure of when a promotion had actually occurred, Dr. Madden's use of this indicator negatively impacts the reliability of her analyses. Although Dr. Madden relied on a data indicator that Boeing itself had developed, the fact that Boeing developed the "Prom_Ind" indicator does not prove that the indicator is accurate. In particular, Boeing was not able to consistently and accurately "push back" the "Prom_Ind" indicator in its data files to mark promotions that had occurred prior to the introduction of the indicator in 2001.

16.     Dr. Madden's multiple pools and regression analyses also do not necessarily compare promotions for similarly-situated employees. The multiple pools constructed by Dr. Madden tend to group together employees with dissimilar circumstances and locations. Similarly, the job aggregation groups utilized by Dr. Madden in her regression analyses tend to group together employees with dissimilar circumstances who would not have been candidates for similar promotions.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
PAGE – 5

*Dr. Ward's Analysis*

17. Dr. Ward's analysis used "career growth," measured by salary progress, as a proxy for promotion. Dr. Ward employed this "career growth" methodology because he concluded that the "Prom_Ind" indicator was not sufficiently accurate to use in measuring promotions. Dr. Ward constructed employee cohorts matching class members to the Caucasian employees who started at the same time in the same job in the same state with a comparable salary, and then tracked those cohorts over time. In general, Dr. Ward's results do not show a statistically significant disadvantage to the class members with respect to their "career progress," as measured by salary growth.

18. The Court finds Dr. Ward's analysis to be more probative than Dr. Madden's. To be sure, Dr. Ward's analysis is imperfect because it analyzes "career growth" in terms of salary, rather than discrete acts of promotion. An employee who receives a salary increase does not necessarily receive a promotion, while all promotions do not come with an increase in salary. Nonetheless, Dr. Ward's analysis provides some evidence of how the careers of class members progressed compared to similarly-situated Caucasian employees.

*Conclusion*

19. The Court finds that Plaintiffs have not demonstrated a significant disparate impact for class members with respect to promotions. Plaintiffs' evidence of disparate impact is based on Dr. Madden's analyses, which the Court does not find persuasive.

*Causation*

20. The Court finds that Plaintiffs have not demonstrated a causal link between any of the specific employment practices identified and any alleged disparate impact on class members in terms of promotions. Neither Dr. Madden's analyses nor other evidence introduced at trial provided such a connection.

**Conclusions of Law**

1. The beginning of the liability period for Plaintiffs' disparate impact claim is July 1997. It should be noted that Boeing states that the disparate impact claim relates to the time period from July 1997 to present, while Plaintiffs assert that the liability period runs from August 10, 1997 to present. Given the minor difference in the parties' positions, the Court uses the earlier date.

2. Plaintiffs must satisfy the following elements to establish a prima facie case of disparate impact under Title VII:

> (1) show a significant disparate impact on a protected class or group; (2) identify the specific employment practices or selection criteria at issue; and (3) show a causal relationship between the challenged practices or criteria and the disparate impact.

Hemmings v. Tidyman's Inc., 285 F.3d 1174, 1190 (9th Cir. 2002).

3. Based on the findings of fact set forth above, the Court concludes that Plaintiffs have not established a prima face case of disparate impact. Plaintiffs have not proved by a preponderance of the evidence that there was a significant disparate impact on class members with respect to promotions during the liability period. Plaintiffs also have not demonstrated a causal connection between any specific employment practices and any alleged disparate impact. Therefore, judgment on the disparate impact claim will be entered in favor of Defendant.

The clerk is directed to send copies of this order to all counsel of record.

Dated: January 17, 2006.

                                            s/Marsha J. Pechman
                                            Marsha J. Pechman
                                            United States District Judge